**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| SOPHIE G., a minor child, by and through her parent and friend, KELLY G., ) ) ) ) | |
| Plaintiffs, ) ) | No. 3:17-cv-00757 |
| v. ) ) | Chief Judge Crenshaw |
| WILSON COUNTY SCHOOLS, ) ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court in this case brought under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794, and Title II of the Americans With Disabilities Act, 42 U.S.C. § 12131 *et seq.*, is Kelly G.'s and Sophie G.'s Motion for Preliminary Injunction. (Doc. No. 8). Also pending is Wilson County Schools' Motion to Dismiss (Doc. No. 22). The Court held a hearing on both Motions on September 7, 2017. For the reasons that follow, the Motion to Dismiss will be granted and the Motion for Preliminary Injunction will be denied.

## I. Factual Allegations

Sophie G. is a seven-year-old girl with autism who attends Tuckers Crossroad Elementary School in Wilson County. Her mother, Kelly G., is employed full time and needs day care for Sophie G., both during the school year and on school breaks.

Wilson County Public School operates an after-school program known as "Kids Club" at a dozen elementary schools, including Tuckers Crossroad. Kelly G. repeatedly sought to enroll her daughter into the program, but her requests were denied because Sophie G. is not fully toilet trained.

The refusal to admit Sophie G. into the Kid's Club program was also the subject of a

November 3, 2016 Due Process Complaint against Wilson County Public Schools before the Tennessee State Department of Education, Special Education Division. More specifically, the Complaint alleged:

> In the IEP [Individualized Education Program], Wilson County determined that "Sophie will have every opportunity to participate in extracurricular and nonacademic activities that she qualifies for." Despite saying so, Sophie is denied access to Tucker Crossroad Elementary School after school program because of her disability.

(Doc. No. 21-2, Due Process Complaint ¶ 23). The Due Process Complaint also alleged that Wilson County did not provide Sophie G. with a free and appropriate education ["FAPE"] because it failed to design and implement an appropriate IEP. (Id. ¶ 29).

On April 12, 2017, the parties entered into a Consent Order that settled the Due Process Complaint. However, no agreement was reached about after-school care, and that issue was voluntarily dismissed by Plaintiffs. Less than two weeks later, the two-count Complaint was filed in this Court.

## II. Motion to Dismiss

Wilson County moves to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for lack of subject matter jurisdiction under Rule 12(b)(1). Its argument under both rules is the same – Plaintiff have not exhausted their administrative remedies under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*.

### A. Standards of Review

The Sixth Circuit has summarized the applicable standard of review for a Rule 12(b)(6) motion:

> To survive a Rule 12(b)(6) motion, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"

> Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007)). The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557, 127 S. Ct. 1955). "If the plaintiffs do not nudge their claims across the line from conceivable to plausible, their complaint must be dismissed." Lutz v. Chesapeake Appalachia, L.L.C., 717 F.3d 459, 464 (6th Cir. 2013) (citation and brackets omitted). Dismissal is likewise appropriate where the complaint, however factually detailed, fails to state a claim as a matter of law. Mitchell v. McNeil, 487 F.3d 374, 379 (6th Cir. 2007).

In re City of Detroit, Mich., 841 F.3d 684, 699 (6th Cir. 2016). It has also summarized the standard

of review for Rule 12(b)(1) motions:

> A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack). United States v. Ritchie, 15 F.3d 592, 598 (6th Cir.1994). A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis. Id. A factual attack challenges the factual existence of subject matter jurisdiction. In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case. Id. Plaintiff bears the burden of establishing that subject matter jurisdiction exists. DLX, Inc. v. Commonwealth of Kentucky, 381 F.3d 511, 516 (6th Cir.2004).

Cartwright v. Garner, 751 F.3d 752, 759-60 (6th Cir. 2014).

While the Court agrees that dismissal is warranted because Plaintiffs did not exhaust their

administrative remedies, it finds the proper vehicle for dismissal to be Rule 12(b)(6), not Rule

12(b)(1). This is because, even though "the distinction makes no difference . . . where the parties do

not dispute the district court's exhaustion-related factual findings," many courts have found (as

discussed below) that "Rule 12(b)(1) is not an appropriate avenue for dismissing an IDEA complaint

for failure to exhaust," Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ., 655 F. App'x 423, 430

(6th Cir. 2016) (collecting cases), because the exhaustion requirement is waiveable.

## B. Application of Law

The IDEA ensures that children with disabilities receive necessary special education services and provides administrative remedies to achieve that goal.  Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 245 (2009); Covington v. Knox Cty. Sch. Sys., 205 F.3d 912, 915 (6th Cir. 2000).  Section 1415(l) of the IDEA addresses that Act's relationship with other statutory remedies and contains an exhaustion requirement:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted* to the same extent as would be required had the action been brought under this subchapter.

29 U.S.C. § 1415(l) (emphasis added).

As this Court pointed out in its Order (Doc. No. 32) requesting supplemental briefs, the Supreme Court in Fry v. Napoleon Community Schools, 137 S. Ct. 743, 752 (2017) (citation omitted) addressed "the confusion in the courts of appeals as to the scope of § 1415(l)'s exhaustion requirement," and held that "Section 1415(l) requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit 'seek[s] relief that is also available' under the IDEA."  Thus, "exhaustion is not necessary when the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee—what the Act calls a 'free appropriate public education,'" or FAPE.  Id. at 748.

The Supreme Court went on to explain that "in determining whether a suit indeed seeks relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint," and offered the following guidance:

> One clue to whether the gravamen of a complaint against a school concerns the denial

of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?

Id. at 757. The Court also observed:

A further sign that the gravamen of a suit is the denial of a FAPE can emerge from the history of the proceedings. In particular, a court may consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute—thus starting to exhaust the Act's remedies before switching midstream. . . . A plaintiff's initial choice to pursue that process may suggest that she is indeed seeking relief for the denial of a FAPE—with the shift to judicial proceedings prior to full exhaustion reflecting only strategic calculations about how to maximize the prospects of such a remedy.

Id.

Applying the Fry inquiries to the facts of this case, the complaint is subject to IDEA's exhaustion requirement. Not only does it appear that Fry's hypotheticals must be answered in the negative, the history of the case suggests that Plaintiffs' claims present an IDEA/FAPE question best suited to a hearing officer familiar with a school setting.

"Congress enacted the ADA 'with the noble purpose of providing a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities," Melange v. City of Ctr. Line, 482 F. App'x 81, 84 (6th Cir. 2012) (citation omitted), by providing that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," 42 U.S.C. § 12132. Similarly, "Congress sought with § 504 . . . 'to remedy a broad, comprehensive concept of discrimination against individuals with disabilities' Ability Ctr. of Greater Toledo v. City of Sandusky, 385 F.3d 901, 912 (6th Cir. 2004) (citation omitted), by providing that a qualified individual with a disability shall not, "solely by reason of her

or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance," 29 U.S.C. § 794(a).

Because the ADA and Rehabilitation Act "contain similar language and are 'quite similar in purpose and scope,'" they are said to be "roughly parallel[]." Babcock v. Michigan, 812 F.3d 531, 540 (6th Cir. 2016) (quoting McPherson v. Mich. High Sch. Athletic Ass'n, Inc., 119 F.3d 453, 459-60 (6th Cir.1997)). For example, "[e]ach Act allows disabled individuals to sue certain entities, like school districts, that exclude them from participation in, deny them benefits of, or discriminate against them in a program because of their disability." Gohl v. Livonia Pub. Sch. Dist., 836 F.3d 672, 681 (6th Cir. 2016) (citing Anderson v. City of Blue Ash, 798 F.3d 338, 357 (6th Cir. 2015)). The statutes are also similar in what they do not require.

Despite its broad mandate, the ADA generally "does not require a public entity to provide to individuals with disabilities personal services, such as wheelchairs; individually prescribed devices, such as prescription eyeglasses or hearing aids; readers for personal use or study; or *services of a personal nature including* assistance in eating, *toileting*, or dressing." 28 C.F.R. § 35.135 (emphasis added). Though not as precise, an implementing regulation under the Rehabilitation Act is similar: "*Attendants*, individually prescribed devices, readers for personal use or study, or other devices *or services of a personal nature are not required* under this section." 28 C.F.R. § 42.503(f) (emphasis added).

The Complaint before the Court is carefully drafted to suggest that this is strictly an ADA and/or Section 504 Rehabilitation Act case. It utilizes jargon that is the hallmark of such cases, including "reasonable accommodation," "qualified handicapped person," "impairment," "a record of physical or mental impairment that substantially limits a major life activity," "individuals with

disabilities," and "reasonable modifications." (Doc. No. 1, Complaint ¶¶ 6, 7, 20, 28). It fails, however, to articulate the reasonable accommodation or reasonable modification that Sophie G. needs in order to participate in Kid's Club.

As the Supreme Court made clear in <u>Fry</u>, "what matters is the crux–or, in legal-speak, the gravamen–of plaintiff's complaint, setting aside any attempts at artful pleading." 137 S. Ct. at 755. Here, the Complaint concedes that "because of Sophie's Autism she is not fully toilet trained," and that Kelly G. "was told that Sophie could not attend Kids Club because she is not toilet trained." (Complaint ¶¶ 23, 30). This exclusive reason for denial was confirmed by Joann Vostala (who's position is not identified), Director Dawn Bradley and Rene Manning of the Department of Exceptional Children, and Dr. Donna Wright, Wilson County School Board Superintendent. (<u>Id.</u> ¶¶ 31, 33, 34, 35).

Plaintiffs cite <u>Pilling v. Bay Area Rapid Transit</u>, 881 F. Supp. 2d 1152, 1161 (N.D. Cal. 2012) for the proposition that "if a public facility excludes an individual from programs or facilities based on toileting difficulties, it can constitute a violation of Title II or Section 504." (Doc. No. 34 at 3). That may be true in some cases, but <u>Pillling</u> is inapposite to the facts presented here.

<u>Pilling</u> involved an "inflexible rule" implemented by a public transit system and a parking facility station that limited bathroom use to 10 minutes. <u>Id.</u> at 1154. Plaintiff used the facility on his commute to work but, because he had undergone a colostomy, required 12 to 18 minutes in the bathroom per day. At issue there was whether plaintiff stated a claims under the ADA or Section 504 because defendants refused to modify the time limit so as to provide a reasonable accommodation for his disability. Personal assistance in toileting was simply not an issue. There is an obvious distinction between being allowed more time to use a facility, and requiring assistance in the use of that facility.

Returning to Fry, the likely answer to both hypotheticals is "no." [1]  Plaintiffs likely could not state a viable claim under the ADA or Rehabilitation Act against a library or theater based on its refusal to provide personal assistants to help with toileting needs.  Nor is it likely that an adult could successfully sue a school that refused to help with bathroom needs, even leaving aside the fact that enrollment in the Kid's Club program is limited to children.  See Paul G. v. Monterey Peninsula Unified Sch. Dist., 2017 WL 2670739, at *7 (N.D. Cal. June 21, 2017) (answering Fry's hypotheticals "no" where special education residential treatment facilities were limited to enrollment by students aged 18 to 22 and, thus, there would be no basis for an adult to request enrollment).

The remaining consideration in Fry–the history of the proceedings–also supports the conclusion that Plaintiffs were required to exhaust administrative remedies prior to bringing suit in this Court.  It is undisputed that Plaintiffs included the Kid's Club claim in the administrative Due Process Complaint and that they voluntarily dismissed the claim.  What is not clear is whether the claim was dropped as a part of a "strategic calculation[]," or "came from a late-acquired awareness that the school had fulfilled its FAPE obligation and that the grievance involves something else entirely."  Frye, 137 U.S. at 757.

Because the basis for dismissal of the Kid's Club claim at the administrative level was not apparent from the record, the Court included that issue in the request for further briefing.  (Doc. No. 32 at 3).  However, in their supplemental brief, Plaintiffs do not address the issue.  They merely parrot Fry's suggestion that the decision to file suit may be the result of a belated recognition that continuing the due process proceeding would be futile.

In both their supplemental brief and at oral argument, Plaintiffs argued that, in the words of

---

[1]  Because the Court is dismissing this case for failure to exhaust administrative remedies, the Court expresses no opinion on whether Plaintiffs could ultimately prevail on a claim under either the ADA or Rehabilitation Act.

Fry a plaintiff need not exhaust remedies if "[a] hearing officer . . . would have to send [them] away empty-handed." Id. at 757. This argument, however, simply begs the ultimate question – could Plaintiffs successfully pursue her present claim in a due process complaint or before an administrative judge? The answer to that inquiry was pretermitted when Plaintiffs dropped their Kid's Club claim, but "when a plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies, exhaustion of those remedies is required.'" S.E. v. Grant Cty. Bd. of Educ., 544 F.3d 633, 642-43 (6th Cir. 2008) (quoting Robb v. Bethel School District # 403, 308 F.3d 1047 (9th Cir. 2002)); see Reyes v. Manor Indep. Sch. Dist., 850 F.3d 251, 256 (5th Cir. 2017) ("Exhaustion requires more than pleading a claim . . . it requires 'findings and decision' by the administrative body.").

At oral argument, counsel asserted that, from the beginning, he believed Wilson County's refusal to admit Sophie G. into the Kid's Club program presented a Rehabilitation Act violation. Nevertheless, he chose to include the Kid's Club issue in the Due Process Complaint, and conceded that he had a Rule 11 good faith basis for the factual allegations made therein. That Complaint not only alleged that Sophie G. was denied entry into the after school program, but also that, under her IEP, she was entitled to "have every opportunity to participate in extracurricular and nonacademic activities that she qualifies for." (Doc. No. 21-2, Complaint ¶ 23). Among the objectives in Sophie's current IEP is "improved independence with donning/doffing . . . clothing for toileting[.]" (Doc. No. 31-1 at 17). Given this record, the Court cannot conclude that a hearing officer would have no authority to require that Sophie G. be allowed to participate in the Kid's Club program, particularly because, there is "some overlap in coverage" as between the ADA, the Rehabilitation Act, and IDEA's FAPE obligation, and "[t]he same conduct might violate all three statutes." Fry, 137 S. Ct. at 756; see Taylor v. Knox Cty. Bd. of Educ., 2017 WL 2610505, at *4 (E.D. Tenn. June 15, 2017) (stating

that "[s]ome claims can be brought under the IDEA, the Americans with Disabilities Act, and the Rehabilitation Act," and observing that "conduct by school staff can violate the IDEA, Title II, and § 504 all at once"); Considine-Brechon v. Dixon Pub. Sch. Dist. # 170, 2017 WL 2480751, at *4 (N.D. Ill. June 8, 2017) (observing that "a plaintiff might seek relief for the denial of a FAPE under Title II and § 504 as well as the IDEA"). Accordingly, this case will be dismissed for failure to exhaust administrative remedies.

### III. Motion for a Preliminary Injunction

In certain circumstance, the failure to exhaust administrative remedies can be jurisdictional, meaning that a court lacks subject matter jurisdiction and the power to act further. Maronyan v. Toyota Motor Sales, U.S.A., Inc., 658 F.3d 1038, 1040 (9th Cir. 2011); Tan v. Attorney Gen. 210 F. App'x 169, 170 (3d Cir. 2006); Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 245 (2d Cir. 2008); MM ex rel. DM v. Sch. Dist. of Greenville Cty., 303 F.3d 523, 536 (4th Cir. 2002). Nevertheless, the Supreme Court has cautioned that "[n]ot all mandatory 'prescriptions, however emphatic, are . . . properly typed jurisdictional.'" Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region, 558 U.S. 67, 81 (2009) (citation omitted).

Specifically with regard to the IDEA, which Section 1415(l) amended, the Courts of Appeal are not entirely in agreement on whether the failure to exhaust administrative remedies is jurisdictional. Compare Kwai Fun Wong v. Beebe, 732 F.3d 1030, 1037-38 (9th Cir. 2013) (holding that Section 1415(l) is a "claims processing provisions" and not jurisdictional) with L.K. v. Sewanhaka Cent. High Sch. Dist., 641 F. App'x 56, 57 (2d Cir. 2016) (stating that the failure to exhaust administrative remedies under the IDEA is jurisdictional and "deprives the court of subject-matter jurisdiction"). For its part, the Sixth Circuit appears not to have definitively resolved the issue, but has "lately broken with its  precedent and implied that the IDEA's exhaustion

requirement is not jurisdictional in nature." Gibson, 655 F. App'x at 430-31 (collecting cases).

Because the failure to exhaust remedies in this case may not be jurisdictional, the parties have briefed the issue and been provided an opportunity to present evidence, and the issue may arise again in substantially the same form after an administrative hearing or an appeal, the Court finds it appropriate to address Plaintiffs' request for preliminary injunction at this time.

In considering a request for preliminary injunctive relief, "courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (quoting Amoco Production Co. v. Gambell, 480 U.S. 531, 542 (1987)).[2] Generally, four factors are considered: "(1) the likelihood of success on the merits; (2) irreparable harm absent injunctive relief; (3) substantial harm to others from the proposed injunction; and (4) the broader public interest." Washington v. Reno Nat'l Credit Union Admin. Bd. v. Jurcevic, 867 F.3d 616, ___, 2017 WL 3442388, at *2 (6th Cir. Aug. 11, 2017); accord Flight Options, LLC v. Int'l Bhd. of Teamsters, Local 1108, 863 F.3d 529, 540 (6th Cir. 2017). "These four considerations are 'factors to be balanced, not prerequisites that must be met.'" Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007) (quoting Jones v. City of Monroe, 341 F.3d 474, 476 (6th Cir. 2003)). "The district judge 'is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue.'" Id.

---

[2] Citing Tenth Circuit authority, Wilson County argues that a heightened standard for issuance of a preliminary injunction is employed where, as here, a party is seeking affirmative relief rather than seeking to maintain the status quo. However, the Sixth Circuit has "conclude[d] that the distinction between mandatory and prohibitory injunctive relief is not meaningful," and, "reject[ed] the Tenth Circuit's 'heavy and compelling' standard[.]" United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth., 163 F.3d 341, 348 (6th Cir. 1998). Instead, "the traditional preliminary injunctive standard the balancing of equities applies to motions for mandatory preliminary injunctive relief as well as motions for prohibitory preliminary injunctive relief." Id.

Given the extremely limited record before the Court,[3] Plaintiffs have failed to carry their "burden of proving that the circumstances clearly demand," Serv. Employees Int'l Union Local 1 v. Husted, 698 F.3d 341, 344 (6th Cir. 2012), that Sophie G. be admitted to the Kid's Club program.

First, and for the reasons already discussed, Plaintiffs have failed to show a likelihood of success on the merits on either their ADA or Rehabilitation Act claim. Their Rehabilitation Act claim might be the stronger of the two because its regulations do not contain the exclusion for "toileting," but do require that a federal fund recipient "provide non-academic and extracurricular services and activities in such manner as is necessary to afford handicapped students an equal opportunity for participation in such services and activities." 34 C.F.R. § 104.37. However, Plaintiffs have not established that Kid's Club is an "extracurricular" activity within the meaning of the Rehabilitation Act, nor have they established that Sophie G's toileting issues are linked to her autism. This failure of proof is significant because the essential elements of a Rehabilitation Act claim include that the aggrieved individual be a "'handicapped person' under the Act" and that she be "'subjected to discrimination under the program solely by reason of h[er] handicap.'" G.C. v. Owensboro Pub. Sch., 711 F.3d 623, 634 (6th Cir. 2013)(quoting Campbell v. Bd. of Educ. of Centerline Sch. Dist., 58 F. App'x 162, 165 (6th Cir. 2003)). Further, in their Motion, Plaintiffs do not specify what accommodation Sophie G. would need, but "Section 504 by its terms does not compel educational institutions to disregard the disabilities of handicapped individuals or to make substantial modifications in their programs to allow disabled persons to participate." Se. Cmty. Coll. v. Davis, 442 U.S. 397, 405 (1979); see Sandison v. Michigan High Sch. Athletic Ass'n, Inc., 64 F.3d 1026,

---

[3] The Complaint is unverified and no testimony was presented at the hearing. The parties agree that the evidence before the Court consists solely of (1) Sophie G.'s Autism Diagnosis and the June 29, 2012 Report by the Office of Civil Rights (Doc. Nos. 8-1 & 8-2); (2) the Due Process Complaint and Consent Order (Doc. Nos. 21-2 & 21-3); (3) Director Wright's Declaration and attached Kid's Club Handbook (Doc. Nos. 29-2 & 29-2); and (4) Kelly G.'s Affidavit and attached IEP Plan (Doc. No. 31-1).

1037 (6th Cir. 1995) (stating that under the Rehabilitation Act the word "'modification' connotes 'moderate change'").

Second, Plaintiffs have not shown irreparable injury. They cite Elrod v. Burns, 427 U.S. 347, 373 (1976), for the proposition that "[t]he deprivation of a constitutional right, even briefly, constitutes irreparable harm." (Doc. No. 8 at 12). However, Elrod has been construed "to require movants to do more than merely allege a violation of [a constitutional right] in order to satisfy the irreparable injury prong of the preliminary injunction frame-work." Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 301 (D.C. Cir. 2006). That is, "to the extent that [movant] can establish a substantial likelihood of success on the merits of its [constitutional] claim, it also has established the possibility of irreparable harm as a result of the deprivation of the [constitutional] right." Connection Distrib. Co. v. Reno, 154 F.3d 281, 288 (6th Cir. 1998); see Libertarian Party of Ohio v. Husted, 751 F.3d 403, 412 (6th Cir. 2014) (same). Because Plaintiffs have not established a substantial likelihood of success on their claims, Elrod's presumption of irreparable harm does not apply.

Plaintiffs also argue that Sophie G. is irreparably harmed by "being excluded from an integrated setting with children who are not disabled" and "the loss of learning and opportunity to model appropriate interpersonal social behavior cannot easily be measured in damages." (Doc. No. 8 at 12). No proof has been presented to support this assertion. Moreover, at oral argument, counsel indicated that Sophie G. was, in fact, in day care but that this care costs more than that provided by Kid's Club. To the extent that the day-care center Sophie attends is comparable with that provided by Wilson County, any alleged harm is likely compensable through damages (*i.e.* the cost differential), and "the general rule is that 'a plaintiff's harm is not irreparable if it is fully compensable by money damages.'" Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc., 716 F.3d 952, 957 (6th

13

Cir. 2013) (quoting <u>Langley v. Prudential Mortg. Capital Co., LLC</u>, 554 F.3d 647, 649 (6th Cir. 2009)). To the extent that Kid's Club provides educational benefits beyond that which Sophie G. receives in her present daycare, this further supports the conclusion that Plaintiffs' request be addressed in the first instance at the administrative level.

Third, Plaintiffs have shown that the substantial harm to others prong is neutral at best. On the one hand, Plaintiffs conclusorily argue that permitting Sophie to attend Kid's Club will required only "minor investments of staff time[.]" (Doc. No. 8 at 13). On the other hand, Wilson County conclusorily asserts that "personnel costs are essentially spread among all working parents who choose to participate" and that, "[a]dding more staff, and higher paid or additionally trained personnel could impact the costs to such parents, and the very existence of the program itself." (Doc. No. 30 at 8). Without factual proof, the Court is not in a position to decide this question.

Fourth, Plaintiffs have not shown that the public interest weighs in favor of an injunction. While it undoubtedly is in the public interest for a school system to comply with the disabilities statutes, whether Wilson County's refusal to allow Sophie G. to enroll Kids Club violated either the ADA or the Rehabilitation Act is an open question. It is also an open question whether accommodating Sophie G.'s needs would require the hiring and training of additional personnel and whether that additional costs would be passed onto other parents, such that they would be harmed by Sophie G.'s admission into the program.

"A preliminary injunction is an extraordinary remedy never awarded as of right." <u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 24 (2008). Because Plaintiffs have not shown their entitlement to such extraordinary relief, a preliminary injunction requiring Sophie G.'s enrollment into the Kid's Club program will not issue.

## IV.  Conclusion

On the basis of the foregoing, Wilson County's Motion to Dismiss will be granted and this case will be dismissed without prejudice for failure to exhaust administrative remedies.  Plaintiffs' Motion for a Preliminary Injunction will be denied.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE